COURT OF APPEALS OF VIRGINIA

Present: Judges Beales, Huff and Senior Judge Clements

THOMASINA LIGHT, A/K/A
 EVA LIGHT

                                                    MEMORANDUM OPINION*
v.      Record No. 1996-18-4                              PER CURIAM
                                                         JUNE 4, 2019
ALEXANDRIA DEPARTMENT OF COMMUNITY
 AND HUMAN SERVICES

               FROM THE CIRCUIT COURT OF THE CITY OF ALEXANDRIA
                             Lisa B. Kemler, Judge

               (Sameena Sabir, on brief), for appellant. Appellant submitting on
               brief.

               (Jonathan D. Westreich, Special Counsel; Joanna C. Anderson;
               Jill A. Schaub; Christopher G. Findlater, Guardian *ad litem* for the
               minor child; Office of the City Attorney, on brief), for appellee.
               Appellee and Guardian *ad litem* submitting on brief.


        Thomasina Light, a/k/a Eva Light (mother) appeals the orders terminating her parental rights

and approving the foster care plan's goal of returning the child to the father's home. Mother argues

that the circuit court erred by finding that (1) the Alexandria Department of Community and Human

Services (the Department) provided reasonable services to mother and (2) the termination of

mother's parental rights was the "least restrictive option" even though the child was placed with his

biological father. Upon reviewing the record and briefs of the parties, we conclude that the

circuit court did not err. Accordingly, we affirm the decision of the circuit court.

---

        * Pursuant to Code § 17.1-413, this opinion is not designated for publication.

BACKGROUND[1]

"On appeal from the termination of parental rights, this Court is required to review the evidence in the light most favorable to the party prevailing in the circuit court." Yafi v. Stafford Dep't of Soc. Servs., 69 Va. App. 539, 550-51 (2018) (quoting Thach v. Arlington Cty. Dep't of Human Servs., 63 Va. App. 157, 168 (2014)).

Mother had been diagnosed with paranoid schizophrenia and bipolar disorder and had been hospitalized "multiple times" for mental health issues. In January 2017, mother was pregnant and had been homeless until she began residing with her mother, Thomasina Lynette Light (the maternal grandmother). Mother denied being pregnant and told the maternal grandmother that she "had a tumor on her stomach." Throughout her pregnancy, mother did not participate in mental health treatment and did not take any medication for her mental illness.

When mother went into labor in April 2017, she was "combative and aggressive" with the paramedics, who responded to the maternal grandmother's home. Mother denied being pregnant or in labor. Eventually, mother was transported to the hospital where she gave birth to the child who is the subject of this appeal.

While in the hospital, mother spoke with stuffed animals, laughed to herself, and spoke about herself in the third person. Mother was very possessive of the child and refused to listen to the nurses about how to care for the child. The nurses and doctors expressed concern to the Department about mother's mental health and her ability to care for the child.

---

[1] The record in this case was sealed. Nevertheless, the appeal necessitates unsealing relevant portions of the record to resolve the issues appellant has raised. Evidence and factual findings below that are necessary to address the assignments of error are included in this opinion. Consequently, "[t]o the extent that this opinion mentions facts found in the sealed record, we unseal only those specific facts, finding them relevant to the decision in this case. The remainder of the previously sealed record remains sealed." Levick v. MacDougall, 294 Va. 283, 288 n.1 (2017).

A social worker met with mother, but found her to be "difficult to engage . . . in conversation." Mother informed the social worker that she did not want to return to the maternal grandmother's home because the maternal grandmother was "not nice" and the home was "unsafe and dangerous." Mother did not have an alternative place to stay with the child, and she did not want the child to be released to the maternal grandmother.

The Department removed the child from mother's care, and mother was involuntarily committed to a hospital for psychiatric care. On April 28, 2017, the City of Alexandria Juvenile and Domestic Relations District Court (the JDR court) entered the emergency removal order.

The Department spoke with Kevin Peck (father) on April 28, 2017. Father informed the Department that he and mother had been engaged to be married, but he called off the wedding. The child was the result of a planned pregnancy, and he wanted custody of the child. A paternity test confirmed that father was the biological father of the child.

On May 4, 2017, the JDR court entered a preliminary child protective order and ordered the parents to complete a mental health assessment and comply with all recommendations. On June 1, 2017, the JDR court entered an adjudicatory order and found that the child was abused or neglected. On June 29, 2017, the JDR court entered a dispositional order, which was appealed to the circuit court. The circuit court adjudicated the child to be abused or neglected and entered a dispositional order. The circuit court also entered a child protective order and ordered mother to cooperate with family engagement services and preschool prevention services, cooperate with mental health evaluations and treatment, comply with all treatment recommendations and medication, and cooperate with a parental fitness assessment. The circuit court referred the case back to the JDR court.

In August 2017, mother was hospitalized again for mental health treatment. After her discharge, mother lived in a shelter and subsequently moved to the maternal grandmother's

house; however, she expressed a desire to obtain her own housing. The Department referred mother to counseling, psychiatric services, and medication management. Mother consistently attended individual counseling and complied with medication management. The Department also referred mother to preschool prevention services to develop skills to care for the child. In November 2017, the Department offered mother weekly supervised visitation with the child. The Department also required mother to show financial stability. Although mother was employed, she could not maintain the same job for more than a month. The Department further required mother "to demonstrate an acceptable level of self-regulation, organization and problem solving skills."

In July 2018, mother participated in a parental capacity assessment. The psychologist noticed that mother had a "misunderstanding" about her mental health and never acknowledged her diagnosis. The psychologist diagnosed mother with bipolar disorder I, moderate. The psychologist found that mother had "poor control of her emotions" and "poor coping skills," which led her "to be compulsive and feel helpless when attempting to control her world and manage her problems." The psychologist also found that mother had "poor interpersonal relationships" and "low self-esteem." Although mother had a "healthy interest in parenting" the child and demonstrated an "ability to understand child development," the psychologist was concerned that mother lacked a support system due to her "tumultuous relationship with her mother." Mother's mental health also proved to be a concern because she still had "difficulty being honest with herself and managing her emotions in a healthy manner." The psychologist questioned mother's capacity to meet the child's developmental and emotional needs. Considering mother's limitations and weaknesses, the psychologist opined that there was a possibility of a "moderate level of risk for future child neglect."

The Department recommended a goal of returning the child home to father. Father had complied with the Department's requirements and developed a strong bond with the child. In June 2018, the Department placed the child, on a trial basis, with father. On the other hand, mother was not consistent with her visitations and had a "weak" attachment to the child. Since mother did not consistently visit with the child, the Department was unable to assess her mental health stability.

In August 2018, the Department filed a petition for a permanency planning hearing with the goal of return home to father and a petition to terminate mother's parental rights. On September 4, 2018, the JDR court terminated mother's parental rights and approved the goal of returning the child home to father. Mother appealed to the circuit court.

On November 9, 2018, the parties appeared before the circuit court. Mother's therapist testified that mother regularly attended counseling sessions, with the goal of managing her emotions better. When mother was hospitalized in August 2017, she still did not acknowledge her mental illness, and instead, stated that her hospitalization occurred because of a "misunderstanding." The therapist last saw mother in September 2018 and explained that mother had made progress toward gaining insight into her mental illness, but still had not fully accepted it. The therapist did not believe that mother could care for herself independently and needed her family's financial support. Mother also did not accept any responsibility in the child's removal and repeatedly described it as "a miscommunication, a misunderstanding."

The Department presented additional evidence that in August 2018, mother still had not accepted responsibility for the child's removal. Mother told the social worker that the child's removal "was a big conspiracy on the hospital and agency's parts and that it was done to make money." The Department also presented evidence that mother did not understand the situation

because after the JDR court terminated her parental rights, mother thought that her visitations would increase.

The Department remained concerned about mother's housing and employment situation. Mother was living with the maternal grandmother, with whom she had a "conflictual relationship." Mother also was unable to stay at one job for more than a month. The Department explained that it was seeking the termination of mother's parental rights, even though the child was being placed with his father and not being adopted, because mother had failed to address her mental health issues and show that she was capable of parenting the child.

Mother testified and denied much of the Department's evidence about her pregnancy and the birth of the child. She said that she knew she was pregnant and she knew she was in labor; however, she did not want father to come to the hospital because he had abused her "mentally and emotionally." When asked if she understood why the child was removed, mother explained that the Department was "in fear of [her] like throwing fits or something."

Mother testified that she takes her medication and sees a psychiatrist and counselor. In October 2018, mother moved, so she had a new psychiatrist and counselor, both of whom she had seen once before the circuit court hearing. Mother acknowledged that she had been diagnosed as bipolar and that the medication helped her feel "more stabilized."

Mother also admitted that father had "made a lot of progress" and that the child was doing well in his care. She told the circuit court that she wanted father, herself, or her mother to have custody of the child and that she did not want her parental rights to be terminated.

At the conclusion of the evidence and argument, the circuit court terminated mother's parental rights under Code § 16.1-283(B) and (C)(2). The circuit court also approved the foster care plan's goal of returning the child home to father and referred the matter to the JDR court for further proceedings. This appeal followed.

ANALYSIS

In our review of a trial court's termination of parental rights, the "trial court is presumed to have thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the child's best interests." Castillo v. Loudoun Cty. Dep't of Family Servs., 68 Va. App. 547, 558 (2018) (quoting Logan v. Fairfax Cty. Dep't of Human Dev., 13 Va. App. 123, 128 (1991)). "Where, as here, the court hears the evidence *ore tenus*, its finding is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it." Fauquier Cty. Dep't of Soc. Servs. v. Ridgeway, 59 Va. App. 185, 190 (2011) (quoting Martin v. Pittsylvania Cty. Dep't of Soc. Servs., 3 Va. App. 15, 20 (1986)).

*Reasonable services*

Mother argues that the circuit court erred in finding that the Department had provided reasonable services to her. Mother asserts that if the services had been reasonable, then she "should have progressed, in increased contact, increased visitation, less supervision and ultimately a co-parenting relationship with Father."

The circuit court terminated mother's parental rights under Code § 16.1-283(B), which states a parent's parental rights may be terminated if:

> 1. The neglect or abuse suffered by such child presented a serious and substantial threat to his life, health or development; and
>
> 2. It is not reasonably likely that the conditions which resulted in such neglect or abuse can be substantially corrected or eliminated so as to allow the child's safe return to his parent or parents within a reasonable period of time. In making this determination, the court shall take into consideration the efforts made to rehabilitate the parent or parents by any public or private social, medical, mental health or other rehabilitative agencies prior to the child's initial placement in foster care.

The circuit court adjudicated that the child was abused or neglected.[2]  Once the court found that the child was abused or neglected, the Department was not required to provide services to mother.  "Nothing in Code § 16.1-283 or the larger statutory scheme requires that . . . [rehabilitative] services be provided in all cases as a prerequisite to termination under subsection B."  Toms v. Hanover Dep't of Soc. Servs., 46 Va. App. 257, 268 (2005); see also Farrell v. Warren Cty. Dep't of Soc. Servs., 59 Va. App. 375, 408-09 (2012).  Nevertheless, the Department referred mother to individual counseling, psychiatric services, medication management, preschool prevention services, and a parental capacity assessment.  Therefore, the circuit court did not err because despite the Department not being required to provide services to mother, it had provided her with reasonable services.

*Termination of parental rights*

Mother argues that the circuit court erred when it terminated her parental rights because it was not necessary when the child had been placed with father.  She asserts that the termination of her parental rights should have been the last resort.

"The termination of parental rights is a grave, drastic, and irreversible action."  Haugen v. Shenandoah Valley Dep't of Soc. Servs., 274 Va. 27, 34-35 (2007) (quoting Lowe v. Dep't of Pub. Welfare of the City of Richmond, 231 Va. 277, 280 (1986)).  "The Supreme Court has repeatedly emphasized that '[w]hile it may be occasionally necessary to sever the legal relationship between parent and child, those circumstances are rare.'"  Thach, 63 Va. App. at 172 (quoting Tackett v. Arlington Cty. Dep't of Human Servs., 62 Va. App. 296, 320 (2013)).  "If there is 'reason to believe that positive, nurturing parent-child relationships exist, the [state's] *parens patriae* interest favors preservation, not severance, of natural familial bonds.'"  Id. at 173 (quoting Richmond Dep't of Soc. Servs. v. Crawley, 47 Va. App. 572, 581 (2006)).

---

[2] Mother did not appeal the circuit court's finding that the child was abused or neglected.

The circuit court recognized that it is "never easy . . . to decide whether or not to terminate a parent's rights." As noted above, the circuit court terminated mother's parental rights under Code § 16.1-283(B), which "'speaks prospectively' and requires the circuit court to make a judgment call on the parent's ability, following a finding of neglect or abuse, to substantially remedy the underlying problems." Toms, 46 Va. App. at 270-71 (quoting City of Newport News Dep't of Soc. Servs. v. Winslow, 40 Va. App. 556, 562-63 (2003)). Although mother had completed many of the required services, there was no evidence that she had remedied the conditions that led to the child's foster care placement. Mother refused to acknowledge her role in the child's removal from her care. She testified that the child was removed because the Department was "in fear of [her] like throwing fits or something." The psychologist who evaluated mother also expressed concerns about mother's mental health and her inability to manage her emotions and develop healthy relationships. In addition, the psychologist found that mother had a "tendency to minimize the reality of her life" and did not take responsibility for her actions. The psychologist forewarned that the child would be at risk of neglect if placed with mother. Mother's therapist testified that mother had not fully accepted her mental illness, although she had made progress toward gaining insight about it. The therapist did not believe that mother was capable of caring for herself independently and relied on her family for support.

The circuit court based its decision to terminate mother's parental rights on a number of factors, including mother's mental illness, her history of unstable housing and employment, her inability to care for herself independently, and her relationship issues. The circuit court acknowledged that mother had "made a lot of progress since her last hospitalization," but explained that her focus for the future should be on her own well-being. The evidence proved that the child had not bonded with mother, but was very attached to father. The circuit court

found that mother did not have the "tools and resources and education to be a good[,] caring and loving parent to" the child, and it was uncertain whether she would be capable of developing those skills.

"It is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his [or her] responsibilities." Tackett, 62 Va. App. at 322 (quoting Kaywood v. Halifax Cty. Dep't of Soc. Servs., 10 Va. App. 535, 540 (1990)). Considering the circumstances, the circuit court did not err in terminating mother's parental rights under Code § 16.1-283(B) and finding that the termination was in the child's best interests.

"When a trial court's judgment is made on alternative grounds, we need only consider whether any one of the alternatives is sufficient to sustain the judgment of the trial court, and if so, we need not address the other grounds." Kilby v. Culpeper Cty. Dep't of Soc. Servs., 55 Va. App. 106, 108 n.1 (2009); see also Fields v. Dinwiddie Cty. Dep't of Soc. Servs., 46 Va. App. 1, 8 (2005) (the Court affirmed termination of parental rights under one subsection of Code § 16.1-283 and did not need to address termination of parental rights pursuant to another subsection). Therefore, we will not consider whether the circuit court erred in terminating mother's parental rights pursuant to Code § 16.1-283(C)(2).

CONCLUSION

For the foregoing reasons, the circuit court's ruling is affirmed.

Affirmed.

- 10 -